JMM:BTR
F.#2011R00882
NYNYE562

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

    - against -

TERRI ANN BEDELL,

           Defendant.

- - - - - - - - - - - - - - - - -X

<u>Under Seal</u>

AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR AN
<u>ARREST WARRANT</u>

M. No. _____
(T. 18, U.S.C., §§ 924(c),
1951; T. 21 U.S.C. § 846)

EASTERN DISTRICT OF NEW YORK SS:

        EDWIN HOLMES, being duly sworn, deposes and says that he is a Task Force Officer with the United States Drug Enforcement Administration ("DEA") duly appointed according to law and acting as such.

        On or about and between April 1, 2009 and April 30, 2010, both dates being approximate and inclusive, within the Eastern District of New York, the defendant TERRI ANN BEDELL, together with others, did knowingly and intentionally conspire to obstruct, delay and affect commerce and the movement of articles and commodities in commerce, by robbery, to wit: the robbery of occupied residences and businesses in Nassau and Queens Counties, whose identities are known to your affiant, of controlled substances, United States currency, jewelry and weapons.

        (Title 18, United States Code, Sections 1951 and 3551

et seq.)

Further, on or about and between April 1, 2009 and April 30, 2010, both dates being approximate and inclusive, within the Eastern District of New York, the defendant TERRI ANN BEDELL together with others, did knowingly aid, abet and distribute firearms to be intentionally used and carried by others during and in relation to one or more crimes of violence, to wit: the defendant allowed her firearm which is identified as a black colored .25 caliber semi-automatic pistol to be used in robberies described below, and did knowingly and intentionally possess said firearm in furtherance of said crimes of violence, in which the firearm was brandished.

(Title 18, United States Code, Sections 924(c)(1)(A)(i), 924(c)(1)(A)(ii), 2 and 3551 et seq.)

1.  I am a Task Force Officer assigned to the Long Island District Office of DEA. I am employed as a Special Investigator with the Nassau County District Attorney's Office, and have been assigned to DEA Task Force as a sworn federal officer for approximately 15 years. Prior to that, I was an officer with the Nassau County Police Department for 34 years. This complaint is based on information and belief the source of that information and the basis of my belief being personal

observations and direct knowledge, discussions with other agents, and confidential sources:[1]

## SUMMARY OF INVESTIGATION

2. This investigation has established, over an eighteen month period, that the defendant TERRI ANN BEDELL (hereinafter "BEDELL") together with others, planned and committed numerous home invasion robberies of businesses in Nassau and Queens counties and elsewhere. The co-conspirators targeted individuals whom they believed to be business owners in possession of quantities of cash. TERRI ANN BEDELL, together with others also targeted known or suspected drug dealers with access to quantities of cash and controlled substances and other valuables. Brandishing firearms, the co-conspirators threatened the individuals they found within the residences and businesses that they targeted and stole quantities of controlled substances, cash, jewelry, weapons and other items of value. The various drugs were then used and sold or distributed.

3. Probable cause to arrest is based, in part, on co-conspirator statements, interviews with the victims and

---

[1]. As this affidavit is submitted only to establish that probable cause exists to believe that the crimes alleged have been committed by the defendants, all the facts known to me as a result of my investigation has not been included.

4

independent analysis and investigation by the police of each robbery. The co-conspirators include Cooperating Witness No. 1 ("CW-1"), Cooperating Witness No. 2 ("CW-2"), Cooperating Witness No. 3 ("CW-3") and Cooperating Witness No. 4 ("CW-4").

4. CW-1's, CW-2's, CW-3's and CW-4's information has been independently corroborated by the physical evidence and debriefings of civilian witnesses. Accordingly, I deem CW-1, CW-2 and CW-3, CW-4 to be reliable. CW-1, CW-2, CW-3 and CW-4 are available to testify.

5. In the fall of 2010, CW-1 and CW-2 separately entered pleas of guilty to conspiracy to commit these Hobbs Act Robberies, three counts of brandishing a weapon during those robberies and conspiracy to launder monies obtained from those crimes, in violation of Title 18, United States Code, Sections 1951, 924(c) and 1956(h), respectively.

6. CW-1, a previously convicted felon, admitted to organizing several robbery groups or "crews," which committed dozens of home invasions, business robberies and related offenses. One of those crews focused on Long Island and Queens, New York. The defendant TERRI ANN BEDELL was involved in crimes involving each of the crews.

7. CW-2, a previously convicted felon, admitted to

committing each robbery described below while armed and brandishing firearms. CW-2 has described planning and participating in armed robberies with the defendant TERRI ANN BEDELL as well as others.

8. CW-3 and CW-4, who have been arrested on these crimes and have admitted to participating in the robberies described below while being armed in most of the robberies and brandishing firearms. CW-3 and CW-4 have described participating in armed robberies with the defendant TERRI ANN BEDELL as well as others.

9. CW-1, CW-2, CW-3 and CW-4 described in detail multiple armed robberies and other offenses committed between April 1, 2009 and April 30, 2010, in which the defendant TERRI ANN BEDELL participated with them. CW-1, CW-2, CW-3 AND CW-4 indicated the defendants planned and participated in these armed robberies in which they robbed individuals, who had been identified to them as drug dealers, in order to steal the drugs and drug proceeds. Businesses or the home of business owners were also targeted if their place of business or home was deemed likely to contain large quantities of cash.

10. As a regular part of their preparation to commit the armed robbery CW-1, CW-2, CW-3 and CW-4 the defendant TERRI

ANN BEDELL and others conducted surveillance of the residence or business they planned to rob, as well as of the surrounding area to determine the best time to conduct the robbery. Such planning included the assignment of roles for each individual in the robbery crew. Various members were assigned to act as lookouts and use radio scanners to anticipate any police response. Others took the task of entering the home or business. Before each robbery, CW-1 distributed guns to the members of the crew for use in brandishing to the victims during the planned robbery including a .25 caliber black semi-automatic pistol identified as the firearm owned by defendant BEDELL. The crew members would confront, threaten and assault victims in order to convince them to surrender valuables. After each robbery, the participants in the crime would meet at a pre-arranged location. CW-1 would collect any guns distributed to the crew. Drugs seized, stolen cash and other valuables would be distributed or re-sold and the money from those sale distributed to the participants in the robbery. The robberies that CW-1, CW-2, CW-3 and CW-4 committed with the defendant BEDELL include, but are not limited to, the following:

### 38th Street, Queens, New York

11. In the afternoon of January 15, 2009, CW-1, and others based on prior information and pre-surveillances proceeded to 38th Street, Queens, New York to commit an armed robbery of a drug trafficker who was believed to be in possession of large quantities of money and drugs. The information the crew received was that the drug dealer had $400,000 in drug proceeds stored in a "foosball table." The robbery crew, including the defendant TERRI ANN BEDELL believed the drug trafficker resided on the first floor of a multi-family dwelling. CW-1 informed the agents that the defendant TERRI ANN BEDELL along with CW-1 and other robbery participants, known to the agents, conducted surveillance on foot at the location prior to the robbery. As part of that surveillances TERRI ANN BEDELL agreed to knock on the front doors of the neighboring homes in an attempt to positively identify the drug traffickers residence. In addition, BEDELL and CW-1 conducted at least one other surveillance of the location prior to the robbery. On the day of the robbery, CW-1 provided the firearms to the robbery crew. The defendant TERRI ANN BEDELL provided her .25 caliber semi-automatic pistol for use during the robbery. The robbery crew, including CW-1 and two others proceeded then to the target location in two vehicles. Parking

near the house, the crew then walked to the robbery location. While walking to the scene one of the participants stole a snow shovel off a neighboring residence and feigned shoveling snow at the location while acting as the lookout. According to CW-1, the other armed participants forced their way into the residence through the rear basement door. Upon forcing their way in, CW-1 and another discovered a locked metal safe in the basement room. CW-1 carried the safe up stairs to the first floor. The second armed participant proceeded to the first floor rear bedroom and confronted a woman in her bedroom. BEDELL's gun, a .25 Lorcin semi-automatic pistol, was brandished towards the woman. CW-1 and the second armed subject demanded money and the location of a Foosball game which allegedly contained $400,000 in currency. CW-1 and the second robber demanded to know where the target was. At this time, the woman told the robbers that she had no knowledge of a "foosball table" and that the individual that the robbers were looking actually lived in the house next door. The robbers then realized they had entered the wrong apartment. Despite that error, they decided to continue with the robbery of the women. One robber held the woman at gun point while CW-1 proceeded to the second floor. CW-1, while attempting to force entry into a second floor apartment heard a voice from within the

apartment and at that point terminated the robbery of the second floor apartment. CW-1 fled the building and loaded the safe into a vehicle. The robbery crew then fled the scene. CW-1 carried the safe into his/her kitchen and proceeded to force the safe open in the presence of the other robbery crew members and the defendant TERRI ANN BEDELL, who has stayed behind in the apartment during the robbery. The safe contained a total of $12,000 in currency and a small amount of assorted jewelry. The currency was evenly divided among the robbers and each received $4,000. CW-1 informed the agents that he/she gave TERRI ANN BEDELL currency from his/her share of the robbery later on that day.

12. On January 15, 2009, the victim of the robbery reported the armed robbery to the New York City Police Department ("NYPD"). A witness reported that in the early morning hours of January 11, 2009, a female Caucasian, blonde hair who was unknown to the victim rang his front door bell and asked for a individual named "Steve." The witness informed the woman that he did not know the individual named Steve and the woman proceeded to leave. The witness viewed a series of over twenty photographic images of female subjects, one of which was a photo of the defendant TERRI ANN BEDELL. The witness positively identified BEDELL as the

woman who confronted him a couple days earlier regarding an individual named "Steve."

13. On May 6, 2010, CW-2 positively identified TERRI ANN BEDELL in a photographic array as a participant in their robbery crew. BEDELL is well known to CW-2. On April 25, 2011, CW-4 positively identified TERRI ANN BEDELL in a photographic array as a participant in their robbery crew. On May 17, 2011 CW-1 had positively identified TERRI ANN BEDELL in photographic array as a participant in this robbery.

### North Shore Animal League, Port Washington, New York

14. CW-4 states that on or about December 12, 2009, CW-4 was present at the home of the defendant TERRI ANN BEDELL located on 206th Street, Queens, New York. CW-4 stated that at this time CW-1, CW-2, CW-4 and TERRI ANN BEDELL were seated at the dining room table. During this conversation, the defendant TERRI ANN BEDELL suggested the crew rob the North Shore Animal League in Port Washington, New York. BEDELL informed CW-1, CW-2 and CW-4 that she had worked there in the past and knew the night drop currency procedures. The defendant BEDELL suggested that the robbery crew could get as much a few thousand dollars on this job. BEDELL further informed the robbery crew that the night drop employee would be unarmed. Based on the information

provided by TERRI ANN BEDELL, CW-1, CW-2, CW-4 and another agreed to do the robbery. All were armed with handguns. The robbery crew then proceeded to the North Shore Animal League, while BEDELL remained behind. Upon arrival at the Animal League complex, CW-1 and CW-2 maintained surveillance of the location. While, CW-4 and another participant known to the agents were en route to the Animal League complex, CW-1 and CW-2 observed a male employee lock the front door of the business and walk toward CW-1 and CW-2 on the side walk. CW-2 exited the car he was in armed with a black colored .38 caliber revolver. CW-2 confronted the man brandishing the revolver and demanded the envelope containing the money. The victim dropped the envelope containing the money. CW-2 recovered the envelope containing the money and ordered the employee to turn around and start running. CW-2 re-entered the car, which was operated by CW-1, and the two robbers drove off. As the robbery was terminating, CW-1 called the remaining members of the robbery crew and told them that the robbery had been completed and to leave the area immediately. The four robbery crew members subsequently met in Queens, New York where the proceeds of approximately $200 were divided.

   17. On December 12, 2009 at about 6:45 p.m., an employee was exiting the North Shore Animal League, 16 Lewyt

Street, Port Washington, New York. The victim secured and exited the Animal Shelter building with the days cash and credit receipts and was proceeding on foot to the to the nearby detached Animal Medical Center building when the victim observed a black male exit the front passenger side of a parked pickup truck. This individual approached the victim and displayed a silver colored hand gun. The individual accosted the victim and told the victim to give him the envelope. The victim dropped the envelope which contained approximately $254 in currency and numerous credit card receipts from the North Shore Animal League. The robber than re-entered the front passenger door of the pickup truck and sped off. The victim immediately reported the robbery to the Port Washington Police Department.

18. The Port Washington Police Department conducted a robbery investigation and recovered a surveillance video which contained the images of a late model pickup truck leaving the scene of the robbery. On February 8, 2010, law enforcement officers executed a search warrant at the residence of the defendant TERRI ANNE BEDELL. Further investigation by the Port Washington Police Department confirmed through police records that the defendant BEDELL was a former employee of the North Shore Animal League.

13

19. On June 10, 2010, CW-2 accompanied by investigating agents personally provided direction to the North Shore Animal League, 16 Lewyt Street, Port Washington, New York and pointed out the business that CW-1, CW-2, CW-4 and another had robbed on December 12, 2009.

20. According to CW-1, the defendant TERRI ANN BEDELL surveilled the location of several robbery locations prior to the robbery crews commission of the robbery in order to provide intelligence to the robbery crew. According to CW-1 and CW-4, BEDELL asked on numerous occasions to participate in the armed home invasions that were carried out. According to CW-1, CW-2 and CW-4 TERRI ANN BEDELL referred to the .25 caliber hand gun as her gun. This hand gun was utilized and brandished during numerous armed home invasions. According to CW-1, CW-2 and CW-4 TERRI ANN BEDELL was the recipient of stolen proceeds of these robberies and others from CW-1's share. CW-1 indicated that BEDELL was given a portion of the cash he received from stolen currency and from the sales of stolen drugs and other valuables. BEDELL was also present when the robbery crew planned various robberies, and often present when the robbery crew returned to divide the stolen proceeds. BEDELL also assisted in the distribution of the stolen goods, on occasion, counting currency

14

that was stolen.

WHEREFORE, your deponent respectfully requests that an arrest warrant be issued for the defendant so that she may be dealt with according to law.

*[signature]*
Edwin Holmes
Task Force Officer
Drug Enforcement Administration

Sworn to before me this
the 20th day of May, 2011

_____
THE HONORABLE ARLENE ROSARIO LINDSAY
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK